UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| Plaintiff | ) | |
| | ) | No. 21 CV 5040 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| JAMES R. COLLINS, et al., | ) | |
| Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Movant | ) | |

**GOVERNMENT'S MOTION TO INTERVENE
AND STAY CIVIL PROCEEDINGS**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR.,
United States Attorney for the Northern District of Illinois, respectfully moves this
Court for an order (a) permitting the United States to intervene in this civil case and
(b) staying discovery in this case until the resolution of the related and recently
indicted criminal case.

## I.     BACKGROUND

On September 23, 2021, the plaintiff in this case, the Securities and Exchange
Commission ("SEC"), filed a complaint alleging that James Collins and Robert DiMeo
committed fraud in connection with the offer and sale of notes backed by a package
of sub-prime automobile loans. Doc. No. 1.   Collins and DiMeo were the Chief
Executive Officer and Chief Operating Officer, respectively, of Honor Finance, LLC.

Honor Finance, LLC worked with a financial institution and an underwriter to securitize a package of more than 14,000 sub-prime auto loans into notes and then issue them through a Trust established for the purpose of the securitization (the "HATS Trust"). The SEC alleges that Collins and DiMeo entered false information into Honor Finance, LLC's accounting database designed to mislead the financial institution, the ratings agencies that rated the notes, and potential and actual investors in the notes to make it appear the sub-prime auto loans securitizing the notes were healthier and more current than they actually were. On or about August 26, 2022, a judgment was entered against DiMeo, wherein the SEC and DiMeo agreed on liability but not on the application of particular remedies, which will wait until the conclusion of the criminal proceedings. Doc. Nos. 32, 33, 35.

On December 12, 2022, a federal grand jury in the Northern District of Illinois returned an indictment charging Collins with bank fraud and securities fraud. *See United States v. Collins,* 22 CR 639 (N.D. Ill., Dec. 12, 2022) (Durkin, J.). The indictment alleges the same criminal conduct as the SEC alleges in this civil complaint, but the indictment additionally alleges the same sort of fraudulent accounting practices and reporting in connection with a separate $200 million revolving credit facility that the same financial institution provided to Honor Finance, LLC. DiMeo was not charged in the criminal case, as he admitted to the conduct as a stipulated offense in a plea agreement in an unrelated criminal case. *See United States v. Collins, et al.*, 20 CR 232 (Guzman, J.).

2

In addition to the overlapping defendant (Collins) in both the SEC's case and the criminal case, both the SEC's complaint and the criminal indictment involve overlapping facts and law. Specifically, according to both the SEC's complaint and the criminal indictment, defendant James Collins, while working as Honor Finance, LLC's CEO, caused the entry into Honor Finance, LLC's accounting database of what were called "Allowable Delinquencies" and "Honor Payments."

Allowable Delinquencies were supposed to be a way of granting a borrower a one-month extension on the payment of his loan in the event the borrower had an issue such as a job loss or a medical issue. Granting an Allowable Delinquency moved the loan along to the next month without moving it from, for instance, the 30-day past due bucket to the 60-day past due bucket. It essentially kept the loan just as current as it was before. One problem with Honor Finance's application of Allowable Delinquencies was that Honor Finance often granted them without any communication with the borrower himself. In other words, Honor Finance kept the loan current with no idea why the borrower was in arrears or any indication that the extension would make it more likely that the borrower would make further payments on the loans. The bank, the ratings agencies, and the bond investors were kept in the dark as to how Honor Finance was using Allowable Delinquencies.

Honor Payments were an accounting mechanism whereby Honor Finance simply credited part or all of a borrower's missing payment for the month in order to keep the loan from becoming further in arrears. The bank, the ratings agencies, and

3

the bond investors did not know about the use of Honor Payments until the scheme was well under way.

Honor Finance's use of Allowable Delinquencies and Honor Payments made these specific loans appear to be more current than they really were, and caused delays in charging off these loans. Collins' purpose of delaying the loans' charge-offs was to maintain a ratio of the outstanding loans in the HATS Trust loan portfolio (which was supposed to be limited to loans that had *not* been charged off) over the balance of the notes sold to investors. This ratio was referred to as the overcollateralization ratio. In order for Honor Finance to keep cash from the HATS Trust for its own use, the overcollateralization ratio needed to be above a certain level. Keeping loans in the portfolio that should have been charged off artificially inflated the overcollateralization ratio and resulted in Honor Finance fraudulently taking more cash from the HATS Trust than it should have been permitted to take. Absent these fraudulent accounting mechanisms, Honor Finance would have been able to access significantly less money from the HATS Trust.

Both the indictment and the civil complaint charge violations of the federal securities law, and the indictment additionally charges bank fraud. As mentioned above, the indictment also charges Collins for his actions with respect to the same sort of fraudulent accounting techniques as to an additional source of funds from that same bank—specifically, a $200 million revolving credit facility (the "Warehouse Line".) There, the indictment charges Collins with using these same practices

concerning Allowable Delinquencies and Honor Payments in order to make the loans in the Warehouse Line portfolio appear healthier and more current than they were and thereby avoid triggering markers the bank had established for certain metrics that were important to the bank, such as the delinquency ratio for the loan portfolio. Avoiding these triggers through the use of Allowable Delinquencies and Honor Payments made it less likely that the bank would call back some of the money Honor Finance had drawn from the Warehouse Line or require Honor Finance to post more collateral.

The United States now seeks to intervene in this civil proceeding in order to seek a stay of discovery pending resolution of the criminal case. According to a joint status report submitted by the SEC and James Collins on November 10, 2022 (Doc. No. 41), only three depositions have been taken thus far in the civil case. The government has been informed that one of those three depositions was of Collins himself, who invoked his Fifth Amendment rights, and the other two were of third-party witnesses whom both the SEC and counsel for Collins were able to examine. Collins indicates that he intends to take an additional 14 depositions, but that he needs more time in which to obtain discovery from third parties. According to the joint status report, those third parties will attempt to provide responsive documents by late December, and none of those depositions have yet been scheduled. The deadline for completion of fact discovery has been moved to May 3, 2023.

The SEC takes no position with respect to this motion. Defendant Robert DiMeo does not oppose this motion. Defendant James Collins opposes this motion and seeks a briefing schedule.

## II. INTERVENTION IS APPROPRIATE

The United States' intervention in this case is appropriate, and the Court has the power to grant the government's motion under Rule 24 of the Federal Rules of Civil Procedure. Rule 24 authorizes two forms of intervention: intervention as of right, and intervention as a matter of discretion. Intervention as of right is governed by Rule 24(a)(2), which provides that "anyone shall be permitted to intervene in an action…when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is represented by existing parties." To intervene as of right under this rule, an applicant must demonstrate that "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest." *Security Ins. of Hartford v. Schipporeit,* 69 F.3d 1377, 1380 (7th Cir. 1995).

Under Rule 24(b)(2), discretionary intervention is appropriate "when the applicant's claim or defense and the main action have a question of law or fact in

6

common." To intervene under this portion of the Rule, an applicant must show the existence of a common question of law or fact and independent jurisdiction. *Schipporeit,* 69 F.3d at 1380. Further, under Rule 24(b)(2), "[i]n exercising that discretion, the court must give some weight to the impact of the intervention on the rights of the original parties." *Id.*

In this context—that is, where there is both a pending SEC civil case and a related criminal case—courts have routinely allowed the government to intervene in the civil case for the purpose of requesting a stay. *SEC v. Downe,* 1993 WL 22126, at *11 (S.D.N.Y., Jan. 26, 1993) ("It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact"). Such interventions have been granted both as a matter of right under Rule 24(a)(2), *e.g., SEC v. Mutuals.com. Inc.,* 2004 WL 1629929 (N.D. Tex., July 20, 2004), and as a matter of discretion under Rule 24(b)(2). *e.g., SEC v. Chestman,* 861 F.2d 49, 50 (2nd Cir.1988); *SEC v. Mersky,* 1994 WL 22305 (E.D. Pa., Jan. 25, 1994); *Downe,* 1993 WL 22126.

In this case, intervention by the United States is appropriate both as a matter of right and as a matter of discretion. First, the government's motion is timely, having been brought only eight days after the criminal indictment was returned and while there is a significant amount of civil discovery left to do in the SEC's case.

Second, there is substantial factual overlap between the civil enforcement action brought by the SEC and the pending criminal case. As noted above, the schemes charged in the two cases are essentially the same, and one of the two defendants (James Collins) in the SEC's case is also the one defendant in the criminal case.

Third, the government's interest in this case that will be impacted if this Court does not stay the SEC's civil case. Under similar circumstances, courts have determined that a stay is appropriate in order to avoid unfair prejudice to the United States by permitting the defendants to obtain civil discovery to which they would not otherwise be entitled in a criminal case, including taking depositions of the government's witnesses. *See, e.g., Downe*, 1993 WL 22126, at *12-13 (granting stay in part because defendants would otherwise be able to obtain testimony via civil discovery from the government's witnesses). Moreover, "even though the SEC is involved in this action, the United States Attorney may have an interest in this litigation which is qualitatively different from the SEC's interest." *Downe,* 1993 WL 221126 at *12; *Mutuals.com,* 2004 WL 1629929 at *2.

Accordingly, the government requests that it be permitted to intervene in this civil case for the purpose of seeking a temporary stay of discovery.

### III.   DISCOVERY IN THIS CASE SHOULD BE TEMPORARILY STAYED PENDING RESOLUTION OF THE CRIMINAL CASE

Based on a district court's inherent power to control and manage its docket, this Court has the authority to stay all or any portion of this case. *See Landis v. North*

*American Co.,* 299 U.S. 248, 255 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Benevolence International Foundation, Inc. v. Ashcroft,* 200 F. Supp. 2d 935, 938 (N.D. Ill. 2002).

In determining whether to stay proceedings and the scope of any stay order, courts examine "a variety of factors." *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 938; *Downe,* 1993 WL 22126 at *12. One factor courts often examine is whether the criminal matter has ripened into an indictment or remains an investigation. *See, e.g., Trustees of Plumbers and Outfitters National Fund v. Transworld Mechanics. Inc.,* 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct . . ."); *Mutuals.com,* 2004 WL 1629929 at *3.

Courts also evaluate whether the civil plaintiff opposes the stay, *Mutuals.com.* 2004 WL 1629929 at *3; *SEC v. Mersky, 1994 WL 22305,* at *3 (E.D. Pa. Jan. 25, 1994), and whether the civil defendants would somehow be prevented from resuming a defense to the civil case once a stay is lifted. *Mutuals.com,* 2004 WL 1629929 at *4; *Mersky,* 1994 WL 22305 at *3.

Another factor that courts evaluate is whether the criminal prosecution will be compromised by allowing the civil case—and the use of civil discovery procedures— to continue. *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 939-

940; *Mersky,* 1994 WL 22305 at *4; *Downe,* 1993 WL 22126 at *12-13. Courts have acknowledged "the great weight" that should be accorded to protecting the government's interest in preserving its ability to prosecute the criminal case without interference from the civil case. *Mersky*, 1994 WL 22305 at *4 (citing *United States v. Stewart,* 872 R2d 957, 962-63 (10th Cir. 1989)); *Chestman,* 861 F.2d at 50). As these courts have noted, the focus is not on a civil party's intent in seeking discovery under the liberal civil discovery rules, but the effect that such discovery could have on the criminal prosecution. *E.g., Mersky,* 1994 WL 22305 at *5 (citing *Integrated Generics v. Bowen,* 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988)); *see also Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 939 ("[A] trial court should not permit a defendant in a criminal case to use liberal civil discovery procedures to gather evidence to which he might not be entitled under the more restrictive criminal rules.").

Finally, in determining whether to stay a civil proceeding, courts often examine whether a stay may result in saving judicial resources because "any successful criminal prosecutions may streamline discovery and trial of the civil case once the stay is lifted. *Mersky,*1994 WL 22305 at *4; *Benevolence International Foundation, Inc.,* 200 F. Supp. 2d at 940-41.

After examining these factors, courts have routinely issued stays of SEC civil enforcement actions pending the resolution of related criminal cases. *See, e.g., Chestman,* 861 F.2d 49; *SEC v. Doody,* 186 F. Supp. 2d 379 (S.D.N.Y.

10

2002); *Mutuals.com,* 2004 WL 1629929; *SEC v. Beacon Hill Asset Management,* 2003 WL 554618 (S.D.N.Y., Feb. 27, 2003); *SEC v. Tandem Management,* 2001 WL 14488218 (S.D.N.Y. Nov. 21, 2001); *SEC v. HGI Inc.,* 1999 U.S. Dist. LEXIS 17377 (S.D.N.Y., Nov. 9, 1999); *Mersky* 1994 WL 22305; *Downe,* 1993 WL 22126. Further, several courts in this district have stayed non-SEC civil cases pending the resolution of related criminal cases. *See, e.g., United States v. All Meat And Poultry Products,* 2003 WL 22284318 (N.D. Ill., Oct. 3, 2003); *Benevolence International Foundation, Inc., ,* 200 F. Supp. 2d 935; *Cruz v. County of DuPage,* 1997 WL 370194 (N.D. Ill., June 27, 1997); *United States v. Michelle's Lounge,* 1992 WL 194652 (N.D. Ill., Aug. 6, 1992); *Marino v. Hegarty,* 1987 WL 9582 (N.D. Ill., April 10, 1987).

In this case, virtually all factors weigh in favor of staying discovery until the criminal case is completed. As an initial matter, the criminal case is pending, with an indictment having been returned on December 12, 2022. Further, the SEC takes no position on this motion, and, while Collins opposes this motion, the one other defendant in the SEC's case does not oppose this motion.

In addition, neither the SEC nor any of the defendants will be prejudiced in defending the civil case following the conclusion of the criminal case. As part of discovery in the criminal case, the United States will produce discovery that includes a substantial number of statements of witnesses and other 3500 material. The government will also produce to the criminal defendants all of the materials the SEC has provided to the government to date during this investigation. In addition,

defendant James Collins, who is the only defendant in the SEC's case currently litigating liability, has invoked his Fifth Amendment rights in his deposition. *See SEC v. Nicholas*, 569 F. Supp.2d 1065, 1070 (C.D. Cal. 2008) ("The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants").

Finally, considerations of judicial economy and the public interest in efficient use of judicial resources also favor the grant of a stay. For example, issues common to both cases can be resolved in the criminal proceedings, narrowing or eliminating factual issues in the civil litigation. Further, a stay "may streamline later civil discovery since transcripts from the criminal case will be available to the civil parties." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1011 (E.D.N.Y. 1992) (granting stay over objection of civil defendants); *see also, e.g., In re Grand Jury Proceedings,* 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues"); *United States v. Mellon Bank*, 545 F.2d 869, 872-73 (3d Cir. 1976) (affirming district court's determination that "judicial economy would best be served by a stay of civil proceedings"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (noting that resolution of the criminal case "might reduce the scope of discovery in the civil case or otherwise simplify the issues"). Finally,

"collateral estoppel in the criminal case may expedite the resolution of the civil case."

*Nicholas*, 569 F. Supp. 2d at 1070.

Accordingly, the government requests that the Court issue a stay of discovery in this case until the resolution of the criminal case.

## IV.    CONCLUSION

For the foregoing reasons, the government requests that the Court grant its motion to intervene and stay all discovery in this case pending further order of the Court and pending the resolution of the related criminal matter captioned *United States v. James Collins,* 22 CR 639 (N.D. Ill., Dec. 12, 2022).

Respectfully submitted,

JOHN R. LAUSCH, JR.
Acting United States Attorney

By: /s/ *Matthew M. Getter*
    MATTHEW M. GETTER
    PAIGE NUTINI
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5300

Dated:  December 20, 2022